UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TYRUS L. COOPER,

                              Plaintiff,

      v.                                      Case No. 24-cv-414-pp

WARDEN LARRY FUCHS, *et al.*,

                              Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Tyrus L. Cooper, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On April 9, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $11.77. Dkt. No. 5. The court received that fee on April 26, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II.    Screening the Complaint

### A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

2

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff was incarcerated at Columbia Correctional Institution when the events described in the complaint occurred. Dkt. No. 1 at ¶13. He sued Warden Larry Fuchs, Deputy Warden Glass, RH2 Unit Manager, Security Director Ryan Blount, Sgt. Krause and Correctional Officer Watson. Id. at ¶¶7-12.

The plaintiff alleges that on November 10, 2023, defendant Sgt. Krause was the supervisor in the restrictive housing unit and was training defendant Officer Watson how to place the plaintiff's cellmate, Shannon Blanks, in handcuffs for showers and visits. Id. at ¶13. During this time, Blanks allegedly

3

was taken for a visit and when he returned, the plaintiff was placed in handcuffs behind his back and ordered to step to the back of his cell. Id. The plaintiff states that Krause and Watson brought Blanks into the cell, removed Blanks' handcuffs and closed the cell trap door. Id. They allegedly left the plaintiff handcuffed behind his back, "placing me in danger of a very serious risk to be harmed or even killed, because my ability to defend myself was completely taken away by Sgt. Krause and C/O Watson." Id.

The plaintiff alleges that once he noticed that Krause and Watson were walking away, "I/we immediately and continually started yelling for them to come back, because they left [the plaintiff] handcuffed, but they never came back." Id. The plaintiff states that he started feeling anxious and uneasy about the handcuffs and as time passed, he became worried and concerned because he didn't know Blanks or what could happen. Id. The plaintiff allegedly passed out and went into a seizure and when he "came to," Lt. Cormican (not a defendant) was raising him up. Id. Officer Walker (not a defendant) allegedly told the plaintiff that he was the first staff member to learn the plaintiff had suffered a seizure, hit his head and was convulsing on the floor. Id. The plaintiff states that he had severe pain to his head, wrist, neck, back and side. Id. He alleges that a nurse saw him and a doctor approved that the plaintiff be given an extra dose of Divalproex and two Tylenol on November 10, 2023. Id. at ¶14.

The day of the incident, the plaintiff allegedly informed defendants Glass and Fuchs about the "full incident." Id. Three days later, the plaintiff received a

response stating that the incident was being reviewed. Id. The plaintiff states that he exhausted his administrative remedies regarding the incident. Id. at ¶¶17-22. He allegedly was transferred to Oshkosh Correctional Institution during the exhaustion process. Id. at ¶21.

The plaintiff states that defendants Fuchs, Glass, Blount and Olson knew there would be training of new officers and that new officers must be trained properly for the safety of staff and incarcerated individuals. Id. at ¶¶24-27. He also claims that defendant Krause, as training officer, knew the danger of leaving one incarcerated individual handcuffed in a cell with his cellmate, knew that handcuffs can be used as a dangerous weapon and must be removed from the cell and knew there was no medical emergency button in the cell. Id. at ¶28. The plaintiff also states that defendant Krause failed to make sure the handcuffs had been removed from the plaintiff, in violation of Department of Corrections policy. Id. He alleges that once Krause became aware that the officers forgot the handcuffs in the cell, he failed to protect the plaintiff from harm in violation of the Eighth Amendment. Id. The plaintiff alleges that defendant Watson knew that he must make safety a top priority and that no weapons or restraints can be left in a cell with an incarcerated individual. Id. at ¶29. The plaintiff claims that Watson failed to protect him from harm in violation of the Eighth Amendment. Id. The plaintiff says that all the defendants knew that the plaintiff had seizures and he asserts that their failure to have an emergency button in the cell along with the failure to uncuff

him amounted to a violation of his rights under the Eighth Amendment. Id. at ¶30.

The plaintiff seeks monetary damages and injunctive relief. Id. at 13-14.

C.     Analysis

A prison official's deliberate indifference to a substantial risk of serious harm to an incarcerated individual violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 829 (1994) (citing Helling v. McKinney, 509 U.S. 25 (1993)). The deprivation must be, objectively, "sufficiently serious[.]" Id. (citation omitted). For a claim based on failure to prevent harm, the incarcerated person must show that he is incarcerated under conditions posing a substantial risk of serious harm. Id. (citing Helling, 509 U.S. at 35). In addition, the prison official must have a "sufficiently culpable state of mind[];"in prison conditions cases, that state of mind is one of "deliberate indifference" to the health of safety of the incarcerated individual. Id. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measure to take it." Id. at 847.

The plaintiff has not alleged that defendants Krause and Watson deliberately failed to remove his handcuffs. It appears that they forgot to remove them. At most, this alleged inadvertent failure to remove the plaintiff's handcuffs would constitute negligence, except that the plaintiff alleges that as Krause and Watson were walking away, he and his cellmate yelled after them,

6

telling them that the plaintiff still was handcuffed behind his back. The court infers that Krause and Watson knew from the yelling that the plaintiff still was handcuffed, yet did not return to remove the handcuffs. The plaintiff focuses on Krause and Watson's failure to prevent harm from the plaintiff's cellmate, but the plaintiff has not alleged that Krause and Watson had any reason to believe that the plaintiff's cellmate posed a substantial risk of serious harm to the plaintiff. On the other hand, the plaintiff *does* allege that Krause and Watson knew the plaintiff suffered from seizures and that there was no medical emergency button in the cell. These circumstances allegedly posed a substantial risk of serious harm to the plaintiff. The court will allow the plaintiff to proceed on an Eighth Amendment claim against Krause and Watson based on allegations that they knowingly left him in his cell handcuffed behind his back with the knowledge that he had a seizure disorder and that the cell did not have an emergency button.

The plaintiff has not stated a claim against defendants Fuchs, Glass, Olson and Blount. To hold an individual defendant liable under §1983 for a violation of an incarcerated individual's constitutional rights, the plaintiff must show that the defendant personally was responsible for that violation. Childress v. Walker, 787 F.3d 433, 439 (7th Cir. 2015); Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." Sanville, 266 F.3d at 740 (internal quotation marks omitted). The plaintiff does

7

not allege that Fuchs, Glass, Blount or Olson had any involvement in Krause and Watson's actions. The court will dismiss them.

Finally, the plaintiff alleges that defendants Krause and Watson violated Department of Corrections policy by leaving him in his cell while handcuffed behind his back. A violation of state laws or regulations is not a basis for a federal civil rights case. See Williams v. Mierzejewski, 401 Fed. App'x 142, 144 (7th Cir. 2010) (citing Guajardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010); Domka v. Portage County, Wis., 523 F.3d 776, 784 (7th Cir. 2008)). The plaintiff has not stated a claim based on an alleged violation of department policy.

### III.   Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Fuchs, Glass, Olson and Blount.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Sgt. Krause and Officer Watson. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$338.23** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an

amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 11th day of October, 2024.

BY THE COURT:

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**

10